Brevard, J.
The defendant was the special agent of the plaintiffs, and received from them on hoard the brig Fame, 1000 pieces of britannias to carry to Cape Francois, to dispose of for the plaintiffs. The plaintiff’s instructions to him were to dispose of the britannias immediately on his arrival at that place to the best advantage, and to vest the proceeds in coffee of the first quality, to be brought to them in Charleston by the return of the same vessel.” In the letter of the plaintiffs, which contained these instructions, a hope or expectation is expressed that the britannias would sell for ten or eight dollars per piece ; hut it contained nothing besides, from which an inference might fairly be drawn that the britannias were not to be disposed of, in case eight dollars a piece or more could not be obtained. The defendant could not so have un . erstood his instructions as to doubt that he was authorised to sell for a less price than eight dollars a piece, since he began to sell immediately after his arrival at the Cape, and actually sold a number of pieces at four dollars a piece. It appears too that he made purchases of coffee on account of plaintiffs. This ap *31 pears from his own letters to the plaintiffs, in which he stated, that on his arrival at the Cape, britannias were selling at four dollars a piece, and coffee at 18 cents per pound. But britannias soon fell to three dollars and three quarters. The brig was captured on her return voyage. Soon after this event, the defendant informed the plaintiffs that he had invested part of the proceeds of their adventure in cash ; viz. Sl506,32, which was taken with the brig, and that he had left the remainder of the britannias unsold at Cape Francois, in the hands of confidential and solvent pei’sons. It ^id not appear that the britannias could not have been disposed of at four dollars, or three dollars and three quarters a piece, or, at least, at three dollars a piece; and it did not appear that better could have been done with it, all circumstances considered.' Neither did it appear that the defendant might not have fulfilled his instructions, by investing the whole proceeds in cof-fee. This, as it appears to me, he ought to have done, and consequently his not doing it, is a violation of his instructions. From his own shewing, he ceased to sell britannias, when he might have sold at S3,75, and that he had made some purchases of coffee. It has not been shewn, that in case he had sold at S3,75, it would not‘have been within the reasonable intendment of his instructions as a disposal to the best advantage; viz. the best price (that could be obtained: nor has it been shewn what was done with the coffee, which was purchased for the plaintiffs : nor how the whole of the britannias which were sold, came to be invested in cash,, when he *32 Was instructed to lay the same out in coffee. It is cleár to me, that he had not a discretionary power, as was alleged, to make such dispositions as he might conceive reasonable or advantageous; he was hound to pursue the plain direction of his letter of instructions, if practicable, and it appears to me, that it was practicable to have done it; at least, to an extent beyond that to which he did pursue if. It was not excusable in him to suspend the execution of his orders, under a pretext that it was for the interest of his employers to do so; and much less so, to wait for further instructions. ,
It is no excuse to say, that he did not wilfully violate or neglect his instructions. It is very immaterial, whether it proceeded from design, gross ignorance, or carelessness ; there is reason, however, to believe that he did wilfully violate his instructions.
It was urged in his behalf, that there Was no proof, that the plaintiffs were damnified in consequence of the defendant’s departure from his instructions, as the cash taken with the brig was insured and they have received an indemnity for that loss; and as the remainder of the britannias were left in safe hands at the Cape. The answer to this' is, that the plaintiffs have been injured by the conduct of their agent in violating their instructions first, in not selling all the britannias, but leaving the greater part unsold in the hands of strangers ; second, in not having accounted for coffee actually purchased; and thirdly, in not having invested the *33 whole of the proceeds in coffee. The extent of the injury may be matter of speculation, but at all events, the actual loss of the plaintiffs appears to be greater in amount than that given by the verdict. Five hundred pieces of britannias and upwards were left in the hands of defendant’s agents at the Cape, as he says, without any authority from the plaintiffs, and without any necessity. This merchandize may be considered as lost to the plaintiffs, who may abandon it to the defendant, and make him answerable for the value. They may consider it as having been unlawfully converted to his own use, contrary to the terms on which it was bailed to him. It did not appear from the evidence, as was contended that the ruler or chief of the brigand government had so engrossed the trade in coffee at the Cape, that it could not be obtained of the requisite quality, within the reasonable interest of the plaintiffs’ instructions.
As to the charge against the estate of Mr. Schult, in the books of his widow, without her consent, it cannot be considered of any consequence. It was not a payment or an accord and satisfaction; neither can it be deemed a discharge of the defendant from his liability, on the ground of an abandonment of their claim on the part of the plaintiffs.
But there is another objection to the verdict, not so easily surmounted as those I have considered. The verdict is for interest on the sum specified by way of damages. This is certainly incorrect. If the jury had calculated interest on the sum men *34 tioned, and had added it to that sum, a verdict for ' / the total amount as damages, would, in my opinion, have been perfectly legal, and only a moderate compensation for the injury done. But the jury were not authorised to give any thing as interest. The verdict, therefore, on that ground is illegal. But the plaintiffs may release their claim to the interest thus illegally given; and if they will do so, I am of opinion, the verdict ought to stand.
See 1st Cotn. on Contracts, 235. Park, 206. 208. 2nd Dallas, 105. Douglas, 376. Diner’s Abridg. Interest. 4th Dallas, 286. Bro. Ch. 463. 2nd Vesey, Jun. 300. 3d JYew- York, T. R. 266. 1st Campbell, 50. 3rd Hen. & Mun. 493. 1st Henry Blackstone, 227. 2nd Bos. & Pull. 337. .472, &c. &c. JYott & MeOrds, 5. Bulow v. Goddard.
Grimke, J.
The second and fourth points having been abandoned, there remain only the first and third for consideration. With respect to the third, which states that the verdict was contrary to law and evidence, I am of opinion that as the evidence was submitted to the jury, and they have given a decision thereon, and as there is no ground on which it could be legally substantiated that their verdict is wrong, a new trial should not be granted.
I am of the same opinion with respect to the law; for there is no point in the books dearer, than that an *35 agent is bound strictly to adhere to the orders of his °# principal. The defendant, in this case, did not observe the directions given him, he therefore becomes ac- ° ' # countable to the plaintiffs for the injury resulting to them from his non-observance of orders. With respect to the third point, as interest is not allowed by our law on unliquidated demands, there must be a new trial, unless the plaintiffs will consent to relinquish that part of their verdict.